**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| DAVID REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:26-cv-00149-DGK |
| | ) | |
| LTN GLOBAL COMMUNICATIONS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING CASE

This is a Fair Labor Standards Act ("FLSA") case. *See* 29 U.S.C. § 201 *et seq.* Plaintiff alleges Defendant LTN Global Communications, Inc., violated the FLSA when it fired him in retaliation for protected complaints Plaintiff made about overtime pay. ECF No. 1-2; *see* 29 U.S.C. § 215(a)(3).

Now before the Court is Defendant's motion to dismiss and compel arbitration. ECF No. 6. Plaintiff opposes the motion, arguing that the alleged arbitration clause in the employment agreement ("the Agreement") is invalid for a variety of reasons. ECF No. 15.

Because there is a valid and enforceable arbitration agreement that covers the claim in this case, Defendant's motion is GRANTED IN PART and DENIED IN PART. The parties are ORDERED to arbitrate this case in accordance with the Agreement. The Court DENIES the motion to dismiss and instead STAYS the case pending arbitration. The parties shall file a status report regarding arbitration every 90 days.

**Undisputed Material Facts**

Defendant, headquartered in Maryland and incorporated in Delaware, made an employment offer to Plaintiff for a position as an Audio Specialist at its location in Liberty, Missouri, on November 30, 2021. After signing the offer letter, which included salary information and stipulations to Defendant's non-disclosure and invention assignment conditions, Plaintiff signed the Agreement on December 2, 2021. The Agreement included provisions for arbitration and equitable remedies:

> (a) <u>Arbitration.</u> Except as provided in subsection (b) below, I agree that any dispute, claim or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Montgomery County, Maryland in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

> (b) <u>Equitable Remedies.</u> I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, 5, 7 and[] 9 herein. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

The Agreement is governed by Maryland law and contains an "entire agreement" clause that identifies the Agreement as the entire agreement between the parties. The Agreement also includes the following acknowledgments by Plaintiff:

> (a) I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else; and

2

(b) I have carefully read this Agreement.  I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand them; and

(c) I sought the advice of an attorney of my choice if I wanted to before signing this Agreement.

Section 2(a)(i) of the Agreement states, "The Company agrees that upon the commencement of my [i.e., Plaintiff's] employment, it will make available to me that Confidential Information of the Company that will enable me to optimize the performance of my duties to the Company.  In exchange, I agree to use such Confidential Information solely for the Company's benefit."

The signature block of the Agreement states, "IN WITNESS WHEREOF, the parties have executed this Agreement on the day, month and year first set forth below; provided, however, that the Company executed this Agreement solely for the purpose of entering into the covenants contained in Section 2(a)(i)."

Plaintiff began work for Defendant on December 6, 2021, and worked until he was fired on December 5, 2023.  Plaintiff alleges that he was fired in retaliation for complaining about Defendant's unwillingness to pay him the overtime pay owed to him under the FLSA in violation of 29 U.S.C. § 215(a)(3).

### Standard

The Federal Arbitration Act ("FAA") applies to this case.  The FAA "establishes a liberal federal policy favoring arbitration agreements."  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (citation and internal quotation marks omitted).  The FAA requires this Court to order arbitration so long as: (1) "a valid [arbitration] agreement exists"; and (2) "the dispute falls within the scope of that agreement."  *Duncan v. Int'l Markets Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021)

3

(internal quotation marks omitted). "[G]eneral state-law principles of contract interpretation [apply] to the interpretation of an arbitration agreement within the scope of the [FAA], . . . and ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989) (citation omitted). "The party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).

**Discussion**

Defendant argues Plaintiff's claim is subject to the Agreement's arbitration clause and that the arbitration clause is valid.[1] Plaintiff does not challenge that the arbitration clause applies to his claim. Rather, he argues the arbitration clause is unenforceable because it (1) impermissibly shifts attorney's fees and costs to him; (2) is illusory; (3) lacks mutuality; and (4) is unconscionable. As "the party resisting arbitration," Plaintiff bears the burden of showing the arbitration clause is invalid. *Triplet*, 42 F.4th at 870.

The Court notes at the outset that this case follows closely on a separate case Plaintiff brought against Defendant in the District of Maryland alleging "'unpaid straight time and overtime compensation and related penalties and damages' under the . . . FLSA . . . and the Missouri Minimum Wage Laws. . . ." *Reed v. LTN Glob. Commc'ns, Inc.*, No. 1:24-CV-03649-JRR, 2025 WL 2653196, at *2 (D. Md. Sept. 16, 2025), *motion to certify appeal denied*, No. 1:24-CV-03649-JRR, 2026 WL 923323 (D. Md. Apr. 6, 2026). When Defendant sought an order to compel arbitration in that case, Plaintiff made arguments identical to the ones he makes here, if in a

---

[1] Alternatively, Defendant argues the case should be transferred to the District of Maryland, where Plaintiff has another related case pending against Defendant. Because the Court grants the motion to compel arbitration, it does not address the question of transfer.

4

different arrangement and order, and the District of Maryland rejected them. Having conducted it

own review, this Court reaches the same conclusion, largely for the same reasons.

**I.      The attorney-fee and cost-sharing provisions do not make the arbitration clause unenforceable.**

First, Plaintiff argues the arbitration clause's attorney-fee and cost-shifting provision is

contrary to the FLSA and the entire arbitration clause is therefore unenforceable. Defendant argues

Eighth Circuit caselaw is to the contrary.

Defendant is correct. *See Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 824 (8th Cir.

2003) (holding district court erred in denying a motion to compel arbitration of FLSA claims when

arbitration agreement provisions conflicted with the FLSA because "[w]hen an agreement to

arbitrate encompasses statutory claims, the arbitrator has the authority to enforce substantive

statutory rights, even if those rights are in conflict with contractual limitations in the agreement

that would otherwise apply"); *see also Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085

(8th Cir. 2001) (holding district court erred in denying motion to compel arbitration of RICO claim

when arbitration agreement's damages limitation conflicted with RICO treble-damages provision,

because "any argument that the provisions of the Arbitration Agreement involve a waiver of

substantive rights afforded by [a federal] statute may be presented in the arbitral forum") (citing

*Great Western Mtg. Corp. v. Peacock*, 110 F.3d 222, 230 (3d Cir. 1997), and applying its rationale

to federal statutes). The fee and cost-shifting provisions do not invalidate the entire arbitration

clause, and the Court will not deny the motion on the grounds Plaintiff argues. Insofar as they are

unenforceable under the FLSA, they are severable under the Agreement itself, *see* Agreement

12(c), ECF No. 6-2 at 7, and the arbitrator has the authority to enforce statutory rights in the face

of conflicting contractual terms, *Bailey*, 346 F.3d at 824. *See also Reed*, 2025 WL 2653196, at

*9–*11 (finding the fee and cost provisions unenforceable but rejecting Plaintiff's argument that

5

the provisions invalidate the entire arbitration clause and therefore severing the fee and cost provisions and holding the arbitration clause to be otherwise enforceable).[2]

## II. The arbitration clause is not illusory, does not lack mutuality, and is not unconscionable.

Second, Plaintiff argues the arbitration clause is illusory, because it imposes no obligation on Defendant to arbitrate disagreements between it and its employees. Plaintiff similarly argues the clause lacks mutuality, because it only requires Plaintiff—not Defendant—to bring claims in arbitration. Plaintiff also argues the arbitration clause is unconscionable, because of (1) unequal bargaining power between employer and employee, (2) confusing terms in the employment agreement (including the length and font), and, again, (3) the alleged imposition of an obligation to arbitrate only on Plaintiff. These arguments overlap, so the Court will treat them together

Under Maryland law, "[a] contract is void if it is unconscionable, a term that encompasses both procedural and substantive unconscionability." *Lloyd v. Niceta*, 255 Md. App. 663, 685 (2022), *aff'd*, 485 Md. 422 (2023) (citation omitted). A court may only "decline to enforce an arbitration provision" if it is unconscionable both procedurally and substantively. *Rankin v. Brinton Woods of Frankford, LLC*, 241 Md. App. 604, 621–22 (2019) (citation omitted). Plaintiff has shown neither.

Plaintiff cites no legal authority to support his argument about unequal bargaining power. And while Maryland courts do recognize that gross inequality in bargaining power can be a sign of procedural unconscionability, *see, e.g.*, *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md. Ct. App. 2007) (citation omitted), this typically occurs when the stronger party "takes advantage of or

---

[2] In *Reed*, Plaintiff submitted evidence of his annual salary and the anticipated costs of arbitration. *Reed*, 2025 WL 2653196, at *9. The District of Maryland concluded the estimated cost to Plaintiff to arbitrate the case under the arbitration clauses cost-splitting provision "impose[d] a prohibitive financial burden on Plaintiff" and thus found the provision to be unenforceable. *Id.* at *10. Plaintiff has not made a similar showing here.

surprises the victim of the clause," *id.* at 1275 (finding that a "mortgagee . . . wait[ing] until the day of closing to present the mortgagor with an arbitration agreement that must be signed, in order that the loan proceeds be disbursed . . . at least[] approaches procedural unconscionability"). Nothing of the sort is present here. The Agreement-signing process occurred over multiple days, and Plaintiff certified that he signed voluntarily, had carefully read and understood the terms, consequences, and binding effect of the Agreement, and had sought legal advice if necessary. Moreover, as the District of Maryland noted in its opinion rejecting this argument, "if unequal bargaining power were enough to create procedural unconscionability, virtually all agreements requiring employees to arbitrate would be unconscionable as employers generally have greater bargaining power than potential employees." *Reed*, 2025 WL 2653196, at \*5 (quoting *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 685 (4th Cir. 2020)).

Plaintiff's argument that the Agreement is confusing due to its length, font, and "unclear legal-ese" also fails. To support the argument, Plaintiff only points to the signature block's reference to Section 2(a)(i) of the Agreement. The signature block says, "the Company [i.e., Defendant] executed this Agreement solely for the purpose of entering in the covenants contained in Section 2(a)(i)." That section, in turn, states "The Company agrees that upon the commencement of my employment, it will make available to me [i.e., Plaintiff] that Confidential Information of the Company that will enable me to optimize the performance of my duties to the Company." In return, Plaintiff agrees "to use such Confidential Information solely for the Company's benefit." The reason the signature block limits Defendant's purpose in signing the Agreement to Section 2(a)(i) is because Section 2(a)(i) is the only part of the Agreement that places a direct obligation exclusively on Defendant.[3] Every other section is either an agreement by

---

[3] Plaintiff's assertion that the clause "does not actually impose any obligations on LTN," ECF No. 15 at 8, is false.

Plaintiff to do or not do something, a right retained by Defendant, a general statement about governing law, or the arbitration clause itself. Read within the context of the Agreement as a whole, this is not "unclear legal-ese."

As to the arbitration clause, Plaintiff admits, "[t]he plain language of the arbitration provision states that any dispute will be resolved through arbitration," ECF No. 15 at 11. This is correct. But Plaintiff's claim that this plain language conflicts with the purpose statement in the signature block is not. As explained above, Section 2(a)(i) is the only section in the agreement directed specifically to Defendant's exclusive duties under the Agreement. Moreover, the arbitration clause does not speak about who must arbitrate disputes but rather stipulates how disputes will be addressed, namely, by arbitration. And, as Plaintiff acknowledges, "any dispute . . . shall be settled by arbitration." In other words, if there is a dispute, it will be resolved in arbitration, regardless of how it arose or who initiated it. *See also Reed*, 2025 WL 2653196, at \*4 (rejecting this same argument and concluding "[t]he plain language of the quoted provision confirms that the parties executed the Employment Agreement in its entirety on the date provided, and merely notes Defendant's 'purpose' in doing so; it neither carves out, nor purports to exempt Defendant from, any portion of the Employment Agreement"). The arbitration clause is therefore not illusory and does not lack mutuality.

Defendant has shown that the arbitration clause in the Agreement is valid and that this dispute falls within the terms of the agreement. Plaintiff's arguments to the contrary are meritless. Indeed, as the Court noted above, every single argument Plaintiff has made in this case was rejected by the District of Maryland in a separate suit Plaintiff filed against Defendant, and that court ordered the parties to arbitration. Plaintiff makes no attempt to explain why the District of Maryland was wrong and does not even refer to that court's decision and order in his briefing.

While this Court is not bound by the District of Maryland's decision, that court's well-reasoned opinion is persuasive, especially in its application of Maryland law. Plaintiff seems to have been content merely to rearrange and reorder the arguments slightly and bring a different—though related—cause of action in a different jurisdiction, hoping for a different result. But the arguments are the same in substance and the same substantive law applies. And Plaintiff has done nothing to show this Court why its decision should be any different than the District of Maryland's.

The Court also notes that Plaintiff's counsel recently brought a suit on behalf of another employee of Defendant in Clay County, Missouri, that is nearly identical to the one Plaintiff brought against Defendant in the District of Maryland. That case was removed to the Western District of Missouri on February 19, 2026. *See Abner v. LTN Global Communications, Inc.*, 4:26-cv-00137-SRB (W.D. Mo. February 19, 2026). In that case, Defendant moved to compel arbitration—as it did in *Reed* and as it does here—and the court granted the motion, rejecting the same arguments that were rejected in *Reed*. The presiding judge in that case, like the undersigned, found the District of Maryland's decision persuasive, largely followed its rationale, and came to the same conclusion. See *Abner*, 4:26-cv-00137-SRB, ECF No. 18 at 5. And that judge likewise noted that Plaintiff's briefing did not argue the District of Maryland's decision was wrongly decided or even mention it. *Id.*

This pattern of behavior is troubling to the Court. Under Rule 11, any filing with the court is a certification by the attorney that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11(b)(2). The District of Maryland held that Plaintiff's claims and legal contentions failed under Maryland and Fourth Circuit law. Plaintiff has made no attempt to show how things should turn out differently here, nor even acknowledged

9

the prior case.  Moreover, 28 U.S.C. § 1927 exposes an attorney "who . . . multiplies the proceedings in any case unreasonably and vexatiously" to the possibility of liability for "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Plaintiff's counsel's conduct borders on violating these provisions, if it has not done so already.

### Conclusion

For the foregoing reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.  The parties are ORDERED to arbitrate this case in accordance with the Agreement.  The Court DENIES the motion to dismiss and instead STAYS the case pending arbitration.  *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  The parties shall file a status report regarding arbitration every 90 days.

**IT IS SO ORDERED.**

Date: July 6, 2026              /s/ Greg Kays
                               GREG KAYS, JUDGE
                               UNITED STATES DISTRICT COURT